# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

STATE OF OHIO, ex rel.
DAVE YOST[1]
OHIO ATTORNEY GENERAL

                **Plaintiff,**

v.

OTTERBEIN UNIVERSITY,

    **and**

UNITED STATES OF AMERICA
UNITED STATES DEPARTMENT OF
DEFENSE, and LLOYD J. AUSTIN III[2]
in his capacity as SECRETARY OF THE
DEPARTMENT OF DEFENSE,

    **Defendants.**

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

CASE NO.:   2:11-cv-508
(consolidated with 2:08-cv-709)

**Judge MICHAEL H. WATSON**

## <u>CONSENT DECREE AND FINAL JUDGMENT ENTRY</u>

Plaintiff, State of Ohio, by and through Ohio Attorney General Dave Yost, at the written request of the Director of the Ohio Environmental Protection Agency ("Ohio EPA"), filed a Complaint in this action (Doc. 2) on June 10, 2011 against Defendants, Otterbein University and the United States, seeking reimbursement of certain Response Costs pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601, *et seq.*, and to enforce Ohio's solid waste, hazardous waste, and water pollution laws found in R.C. Chapters 3734 and 6111 and rules adopted thereunder ("Complaint").

WHEREAS, Defendants, Otterbein University and the United States, do not admit any

---

1 Dave Yost is now the Ohio Attorney General and is substituted pursuant to Fed. R. Civ. P. 25(d) for the former Ohio Attorney General.
2 Lloyd J. Austin III is now the Secretary of the Department of Defense and is substituted pursuant to Fed. R. Civ. P. 25(d) for the former Secretary.

liability to Plaintiff arising out of the transactions or occurrences alleged in the Complaint, nor do they acknowledge that the release or threatened release of hazardous substance(s) at or from the Site constitutes an imminent and substantial endangerment to the public health or welfare or the environment.

WHEREAS, Ohio EPA approved Otterbein's Remedial Investigation and Feasibility Study, and Ohio EPA then published the final Kilgore Decision Document on August 1, 2018.

WHEREAS, the Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and that implementation of this Consent Decree will expedite the cleanup of the Site and will avoid prolonged and complicated litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

THEREFORE, without trial or admission of any issue of law or fact, and upon the consent of the undersigned parties, it is hereby ORDERED, ADJUDGED, and DECREED as follows:

## TABLE OF CONTENTS

| | |
|---|---|
| I. | Statement of Purpose and General Provisions |
| II. | Definitions |
| III. | Jurisdiction and Venue |
| IV. | Parties Bound |
| V. | Calculation of Time |
| VI. | Satisfaction of Lawsuit; No Admission |
| VII. | Remedial Action and Other Injunctive Relief |
| VIII. | Implementation of the Remedy |
| IX. | Additional Work |
| X. | Notice, Land Use, and Conveyance of Title |
| XI. | Designation of Site Coordinators |
| XII. | Sampling and Data Availability |
| XIII. | Site Access |
| XIV. | Progress Reports and Notice |
| XV. | Review of Submittals |
| XVI. | Dispute Resolution |

2

| | |
|---|---|
| XVII. | Access to Information |
| XVIII. | Indemnity |
| XIX. | Unavoidable Delays |
| XX. | Payments and Reimbursement of Costs by Otterbein University to Ohio EPA and the Ohio Attorney General |
| XXI. | Payments and Reimbursement of Costs by the United States to Otterbein University (Performing Defendant) |
| XXII. | Payments and Reimbursement of Costs by the United States to Ohio EPA and the Ohio Attorney General |
| XXIII. | Financial Guarantees |
| XXIV. | Agreements Not to Sue and Reservation of Rights |
| XXV. | Effect of Settlement; Contribution Protection |
| XXVI. | Other Claims |
| XXVII. | Termination |
| XXVIII. | Modification |
| XXIX. | Mailing and Delivery of Documents |
| XXX. | Compliance with Applicable Laws, Permits and Approvals |
| XXXI. | Appendices and Documents Approved Pursuant to this Consent Decree |
| XXXII. | Court Costs |
| XXXIII. | Stipulated Penalties |
| XXXIV. | Authority to Enter Into the Consent Decree |
| XXXV. | Effective Date |
| XXXVI. | Entry of Consent Decree and Judgment by Clerk |
| XXXVII. | Retention of Jurisdiction |

## APPENDICES

| | |
|---|---|
| A. | Decision Document |
| B. | Site Map |
| C. | RD/RA Work Plan |
| D. | RD/RA Guidance Document List |
| E. | Environmental Covenant Template |
| F. | Financial Guarantees |

## I. STATEMENT OF PURPOSE AND GENERAL PROVISIONS

1.      In entering into this Consent Decree, the mutual objectives of the State of Ohio and

the Defendants include (1) completion of a Remedial Design/Remedial Action ("RD/RA") to

implement the remedy set forth in the Decision Document; (2) the reimbursement of certain Response Costs incurred and to be incurred by the State of Ohio; and (3) the resolution of all claims asserted by Otterbein University against the United States concerning past response costs and future response costs to be incurred by Otterbein University through the completion of the RD/RA work required by this Consent Decree; and (4) the resolution of the Defendants' liability to the State for Response Costs and Response Actions in a judicially approved settlement.

## II. DEFINITIONS

2. The following definitions shall apply in this Consent Decree:

A. "CERCLA" means the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended 42 U.S.C. § 9601 *et seq.*

B. "Consent Decree" or "Decree" means this Consent Decree and Final Judgment Entry and all appendices hereto.

C. "Decision Document" means the document issued by the Director of Ohio EPA on August 1, 2018, after the public notice and comment period for the Preferred Plan giving the Director's selected remedy for the Site and reasons for its selection. The definition includes adjustments to the Decision Document that are included in the Former Kilgore Site Remedial Design/Remedial Action Project Status Letter, received by Ohio EPA on April 16, 2021 and approved on April 27, 2021.

D. "Defendants" means Otterbein University and the United States of America.

E. "Director" means Ohio's Director of Environmental Protection.

F. "DOD" means the United States Department of Defense as described in 10 U.S.C. § 111.

G. "Effective Date" means the date the clerk of the U.S. District Court for the Southern District of Ohio, Eastern Division, enters this Consent Decree.

H. "Environmental Covenant" means a servitude arising under an environmental response project that imposes activity and use limitations and that meets the requirements established in section 5301.82 of the Revised Code.

4

I.      "Facility" means the former Kilgore Manufacturing Company facility, now owned by Otterbein University, comprising approximately 110 acres and located at 600 North Spring Street in Westerville, Ohio.

J.      "Guidance Documents" mean those documents identified in Appendix D to this Consent Decree.

K.      "Matters Addressed" means the Work, Ohio's Response Costs, Otterbein's Response Costs, and the United States' Response Costs.

L.      "National Contingency Plan" or "NCP" means the National Oil and Hazardous Substances Pollution Contingency Plan, promulgated pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, codified at 40 C.F.R. Part 300, including, but not limited to, any amendments thereto.

M.      "Ohio EPA" means the Ohio Environmental Protection Agency and its designated representatives.

N.      "Ohio Response Costs" means the State of Ohio's costs of "response" as that term is defined by Section 101(25) of CERCLA, 42 U.S.C. § 9601(25), that are not inconsistent with the National Contingency Plan, and that have been incurred, or will be incurred, by the State related to the investigation and remediation of the Site including, but not limited to, payroll costs, contractor costs, travel costs, direct costs, overhead costs, administrative costs, legal and enforcement related costs, oversight costs, laboratory costs, the costs of reviewing and developing plans, reports, and other items pursuant to this Consent Decree, verifying the Work, or otherwise implementing or enforcing this Consent Decree. For purposes of this Consent Decree, "Past Ohio Response Costs" are those costs incurred by the State on and before July, 2021. "Future Ohio Response Costs" are those costs incurred by the State after July, 2021 in connection with the RD/RA required by this Consent Decree.

O.      "Otterbein's Response Costs" means all costs related or pertaining to the Facility that are necessary, that are consistent with the NCP, and that have been previously incurred at the Facility or will be incurred through the performance of the Work required by this Consent Decree.

P.      "Paragraph" means a portion of this Consent Decree identified by an Arabic numeral or an uppercase or lowercase letter.

Q.      "Parties" means collectively the State of Ohio, Otterbein University and the United States.

R.      "Performing Defendant" means Otterbein University.

S.     "Plaintiff" or "State" means the Ohio EPA by and through the Ohio Attorney General.

T.     "RCRA" means the Solid Waste Disposal Act, as amended, 42 U.S.C. §§ 6901, *et seq*. (also known as the Resource Conservation and Recovery Act).

U.     "Remedial Design" means the detailed engineering plans, specifications and construction drawings, which are in compliance with the National Contingency Plan ("NCP") and sufficient to implement the selected Remedial Action.

V.     "Remedial Action" means any action, or part thereof, selected by Ohio EPA that abates or reduces the threat posed by a placement or disposal or threatened disposal of hazardous substances to prevent present or future harm to the public health or welfare or to the environment, including operation and maintenance of the Remedial Action, and is consistent with the applicable local, state and federal laws and regulations, the NCP, and this Consent Decree.

W.     "RD/RA" means the Remedial Design and Remedial Action including operation and maintenance of the Site to be performed under this Consent Decree.

X.     "RD/RA Work Plan" means the work plan received by Ohio EPA on June 21, 2021 and approved by Ohio EPA on June 23, 2021, as set forth in Appendix C of this Consent Decree and the documents detailing the requirements necessary to implement the RD/RA, as more fully described in the appendices to this Consent Decree.

Y.     "Section" means a portion of this Consent Decree identified by a Roman numeral.

Z.     "Settling Federal Agencies" means DOD acting by and through the United States Department of the Army.

AA.     "Site" means the approximate 40-acre portion of the Facility, as depicted on Appendix B, where the treatment, storage, and/or disposal of hazardous waste and/or hazardous substances, and/or the discharge to waters of the state of industrial waste or other wastes have occurred, including any other area where such hazardous wastes, hazardous substances, industrial wastes, and/or other wastes have migrated or threaten to migrate.

BB.     "State" means the State of Ohio by and through its Attorney General on behalf of the Ohio Environmental Protection Agency.

CC.     "Transferee" means any future owner of any interest in the Site, including

6

but not limited to, owners of an interest in fee simple, mortgagors, easement holders, and lessees.

DD. "United States" means the United States of America and each of its departments, agencies, and instrumentalities, including but not limited to the United States Department of Defense.

EE.     "Waste Material" means (1) any "hazardous waste" under R.C. 3734.01(J) or Ohio Adm. Code 3745-50-10(A) or 3745-51-03; (2) any "hazardous constituents" as that term is defined in Ohio Adm. Code 3745-50-10(A) and listed in the appendix to Ohio Adm. Code 3745-51-11; (3) any "industrial waste" under R.C. 6111.01(C); or (4) any "other wastes" under R.C. 6111.01(D).

FF.     "Work" means all activities Performing Defendant is required to perform under this Consent Decree.

### III. JURISDICTION AND VENUE

3.     This Court has subject matter jurisdiction over claims in the Complaint, pursuant to 28 U.S.C. § 1331 (Federal Question), 42 U.S.C. §§ 9607 and 9613(b) (CERCLA), and 28 U.S.C. § 1367 (Supplemental Jurisdiction). This Court has personal jurisdiction over the Parties. Venue is proper in this Court. For the purposes of this Consent Decree, Defendants agree that the State's Complaint, Case No. 11-cv-508, states one or more claims upon which relief can be granted.

### IV. PARTIES BOUND

4.     The provisions of this Consent Decree shall apply to and be binding upon the State, Defendants, and Defendants' agents, officers, employees, assigns, and successors in interest. Performing Defendant is ordered and enjoined to provide a copy of this Consent Decree to each contractor it employs to perform Work itemized herein. Performing Defendant shall ensure that its contractors perform the Work contemplated herein in accordance with this Consent Decree. No change in corporate ownership or status of Performing Defendant, including, without limitation, any transfer of assets or real or personal property, shall in any way alter Performing Defendant's

7

obligations under this Consent Decree.

5.     The obligations of Defendants to pay the amounts owed to the State under this Consent Decree are set forth in Sections XX and XXII of this Consent Decree.

## V. CALCULATION OF TIME

6.     Unless otherwise stated in this Consent Decree, where this Consent Decree requires actions to be taken within a specified period of time (*e.g.*, "within thirty (30) days"), this time period shall begin the day after the Effective Date of this Consent Decree unless the time is otherwise stated to start at another point in time. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or State of Ohio or federal holiday, the period shall run until the end of the next day that is not a Saturday, Sunday or legal holiday.

## VI. SATISFACTION OF LAWSUIT; NO ADMISSION

7.     Except as provided in Section XXIV, Agreements Not to Sue and Reservation of Rights, compliance with the terms of this Consent Decree shall constitute full satisfaction of any civil liability of Defendants to the State for all claims alleged in the Complaint and all Matters Addressed. Nothing in this Section shall apply to new conditions at or new information about the Site, or to any violations arising out of acts or omissions first occurring after the Effective Date. This Consent Decree is not to be interpreted as an admission on the part of any Party of any liability or wrongdoing, and it is expressly understood that no Party admits liability of any sort on any issue of fact or law. This Consent Decree supersedes the previous consent decree in this action, for remedial investigation and feasibility study of the Site, which is hereby terminated pursuant to the requirements of that consent decree.

8

## VII. **REMEDIAL ACTION AND OTHER INJUNCTIVE RELIEF**

8.     Performing Defendant is ordered and enjoined to comply with all applicable provisions of the Ohio hazardous waste laws and rules and water pollution laws and rules as set forth in R.C. Chapters 3734 and 6111 and Ohio Adm. Code Chapters 3745-1 through 3745-2 and 3745-50 through 3745-69 and 3745-270.

9.     Performing Defendant is ordered and enjoined to comply with and implement the requirements set forth in this Consent Decree and the appendices hereto.

## VIII. **IMPLEMENTATION OF THE REMEDY**

10.     Performing Defendant shall implement Appendix C, the RD/RA Work Plan, approved by Ohio EPA on June 23, 2021, and the Work detailed therein in accordance with the schedule contained in the approved RD/RA Work Plan. All Work to be performed by Performing Defendant pursuant to this Section shall be under the direction and supervision of a qualified engineer or geologist with expertise in hazardous waste site investigation and remediation.

## IX. **ADDITIONAL WORK**

11.     Should Ohio EPA determine that additional Work is necessary to achieve the purposes of this Consent Decree, as set forth in Section I, Ohio EPA may notify Performing Defendant in writing of the need for such additional Work. Within thirty (30) days of the receipt of such notification from Ohio EPA, Performing Defendant shall prepare and submit to Ohio EPA for review and approval a work plan for the performance of the additional Work ("Work Plan for Additional Work"). Any required Work Plan for Additional Work that includes sampling as an element shall include a sampling plan together with a rationale for the sampling activities,

locations, quantity and frequency of sampling, constituents for analysis, and quality control/quality assurance procedures.

12.     Performing Defendant shall submit the Work Plan for Additional Work for review and approval pursuant to Section XV, Review of Submittals, and Section XXIX, Mailing and Delivery of Documents. Upon approval of the Work Plan for Additional Work by Ohio EPA, Performing Defendant shall implement the Work Plan for Additional Work in accordance with the schedules contained therein.

13.     In the event that Performing Defendant determines that additional Work is necessary to achieve the purposes of this Consent Decree as set forth in Section I, Performing Defendant shall submit a written request for approval to Ohio EPA explaining the need for and detailing the nature of the additional Work prior to performing the additional Work. Upon agreement by Ohio EPA with Performing Defendant's request, Performing Defendant shall develop and implement a Work Plan for Additional Work as set forth in this Section IX of this Consent Decree.

14.     In the event that additional Work is necessary for any task described in this Consent Decree, the deadline for completing such task(s) shall be extended by the amount of time required to perform the additional Work required, including the period of time required to plan and/or obtain approval from the Ohio EPA for the performance of such Work.

## X. NOTICE, LAND USE, AND CONVEYANCE OF TITLE

15.     Notice. If Performing Defendant conveys any interest in the property included in the Site, each deed, title, or other instrument shall contain a notice stating that the property is subject to this Consent Decree and shall reference any monitoring, treatment, or containment

10

devices present on the property as a result of this Consent Decree, and shall include a requirement that any subsequent owner shall not in any way compromise said monitoring, treatment, or containment devices, or any other element of the remedy chosen for the Site.

16.     Land Use.  Performing Defendant, its successors and assigns shall ensure that no portion of the Site shall be used in any manner that would adversely affect the integrity of any containment, treatment, or monitoring systems at the Site, or violate any use restrictions applicable to the Site under this Consent Decree.

17.     Environmental Covenant.  Within sixty (60) days after the Effective Date of this Consent Decree, unless otherwise agreed by the Parties, or after acquiring an interest in the property, Performing Defendant shall record with the Delaware County Recorder's Office an Environmental Covenant for the property that is part of the Site owned by the Performing Defendant.  The Environmental Covenant shall be consistent with the template contained in Appendix E, shall be signed by Performing Defendant, and shall be approved and signed by Ohio EPA.  The Environmental Covenant shall be recorded in the deed or official records of the County Recorder of Delaware County, Ohio pursuant to R.C. 5301.82.  The terms and conditions of the Environmental Covenant are incorporated into this Consent Decree and shall be binding upon Performing Defendant.  Thereafter, if Performing Defendant conveys any interest in the property included in the Site, each deed, title, or other instrument shall contain a notice stating that the property is subject to this Consent Decree and shall reference any monitoring, treatment, or containment systems present on the property as a result of this Consent Decree.

18.     Proof of Filing Environmental Covenant.  Within thirty (30) days after filing with the Delaware County Recorder the executed Environmental Covenant, Performing Defendant shall

11

certify to Ohio EPA that the Environmental Covenant has been filed for recording, and include with the certification a file and date-stamped copy of the recorded Environmental Covenant. If the Environmental Covenant is violated or breached by Performing Defendant, the Performing Defendant shall be in violation of this Consent Decree.

19.     <u>Notice of Transfer of Property</u>.  Prior to Performing Defendant's executing an instrument conveying any interest in any portion of the Site, including but not limited to easements, deeds, leases and mortgages, Performing Defendant shall notify the party purchasing the property of the existence of any containment, treatment, and monitoring systems on the Site, and shall provide a copy of this Consent Decree to the party purchasing the property.  Performing Defendant shall notify Ohio EPA at least sixty (60) days in advance of each conveyance of an interest in any portion of the property that is known to comprise the Site.  The notice shall include a copy of the deed transfer document and the name and address of the party purchasing the property and a description of the provisions made for the continued access to and maintenance of the containment, treatment, and monitoring systems.  Within thirty (30) days after conveyance of any interest in any portion of the property, Performing Defendant shall submit to Ohio EPA, by email to Raymond R. Moreno, Raymond.Moreno@epa.ohio.gov, or his successor, and to Sam Staschiak at Samuel.Staschiak@epa.ohio.gov, or his successor, the following information:

A.     A copy of the deed or other documentation evidencing the conveyance.

B.     The name, address, and telephone number of the new property owner and the name, address, and telephone number of the contact person for the new property owner.

C.     A legal description of the property, or the portion of the property, being transferred.

D.     A copy of the survey map, if any, of the property, or the portion of the property, being transferred.

12

E.    The closing date of the transfer of ownership of the property, or portion of the property.

## XI.  DESIGNATION OF SITE COORDINATORS

20.    Within ten (10) days of the Effective Date of this Consent Decree, Performing Defendant shall designate, in writing or by email, a Site Coordinator to oversee and implement the Work required by this Consent Decree and to coordinate with the Ohio EPA Site Coordinator. Performing Defendant may also designate an alternate Site Coordinator.  To the maximum extent practicable, communication between Performing Defendant and Ohio EPA concerning the activities performed under this Consent Decree shall be through the Site Coordinators.  Each Party's Site Coordinator shall be responsible for ensuring that communications from the other Party are appropriately disseminated and processed.  For the duration of this Consent Decree, Performing Defendant's designated Site Coordinator or alternate shall be on-site or on-call during all hours of Work to be performed pursuant to this Consent Decree.  The absence of the Ohio EPA Site Coordinator from the Site shall not be cause for stoppage of Work unless otherwise provided.

21.    Performing Defendant or Ohio EPA may change their Site Coordinator or alternate by notifying the other Party at least five (5) days prior to the change, unless impractical, but in no event later than the actual day the change is made.

22.    Without limiting any authority conferred by law on Ohio EPA, the authority of the Ohio EPA Site Coordinator includes, but is not limited to:

A.    Taking samples and directing the type, quantity and location of samples to be taken by Performing Defendant pursuant to an approved work plan.

B.    Observing, taking photographs, or otherwise recording information related to the implementation of this Consent Decree, including the use of any mechanical or photographic device.

C.  Directing that Work stop whenever the Ohio EPA Site Coordinator determines that the activities at the Site may create or exacerbate a threat to public health or safety or threaten to cause or contribute to air or water pollution or soil contamination.

D.  Conducting investigations and tests related to the implementation of this Consent Decree.

E.  Inspecting and copying records, operating logs, contracts and/or other documents related to the implementation of this Consent Decree.

F.  Assessing compliance with this Consent Decree by Performing Defendant and its agents and/or contractors.

## XII. SAMPLING AND DATA AVAILABILITY

23.  Performing Defendant shall notify Ohio EPA not less than ten (10) days in advance of all sample collection activity. Upon request, Performing Defendant shall allow split and/or duplicate samples to be taken by Ohio EPA. Ohio EPA shall also have the right to take any additional samples it deems necessary.

24.  As part of the monthly progress reports required in Section XIV, Progress Reports and Notice, Performing Defendant shall submit to Ohio EPA copies of the results of all sampling and/or tests or other data, including validated raw data and original laboratory reports, generated by or on behalf of Performing Defendant with respect to the Site and any Work related to this Consent Decree.

25.  Performing Defendant shall submit to Ohio EPA by email to Raymond R. Moreno, Raymond.Moreno@epa.ohio.gov, or his successor, and to Sam Staschiak at Samuel.Staschiak@epa.ohio.gov, or to his successor, with copies to the Settling Federal Agencies, all interpretive reports and written explanations concerning the raw data and original laboratory reports. Such interpretive reports and written explanations shall not be submitted in lieu of original laboratory reports and raw data. Should Performing Defendant subsequently discover an error in

14

any report or raw data, Performing Defendant shall promptly notify Ohio EPA of such discovery and provide the correct information, in writing.

## XIII. SITE ACCESS

26.     As of the Effective Date of this Consent Decree, Plaintiff and its representatives and contractors shall have access at all reasonable times to the Site and any other property controlled by or available to Performing Defendant to which access is necessary to effectuate the actions required by this Consent Decree. Access shall be allowed for the purposes of conducting activities related to this Consent Decree including but not limited to:

A.     Monitoring the Work or any other activities taking place at the Site.

B.     Verifying any data or information submitted to Plaintiff.

C.     Conducting investigations relating to contamination at or near the Site.

D.     Obtaining samples.

E.     Assessing the need for, planning, or implementing additional response actions at or near the Site.

F.     Inspecting and copying records, operating logs, contracts or other documents maintained or generated by Performing Defendant or its agents, consistent with this Consent Decree and applicable law.

G.     Using a camera, video recording, sound recording, or other documentary production equipment.

H.     Assessing compliance with this Consent Decree by Performing Defendant and their agents and/or contractors.

27.     To the extent that any property of the Site, to which access is necessary to effectuate the actions required by this Consent Decree, is owned or controlled by persons other than Performing Defendant, Performing Defendant shall use its best efforts to secure access from such persons for Performing Defendant and Ohio EPA as necessary to effectuate this Consent Decree.

15

Copies of all access agreements obtained by Performing Defendant shall be provided promptly to Ohio EPA. If any access required to effectuate this Consent Decree is not obtained within thirty (30) days of the Effective Date of this Consent Decree, or within thirty (30) days of the date Ohio EPA notifies Performing Defendant in writing that additional access beyond that previously secured is necessary, Performing Defendant shall promptly notify Ohio EPA in writing of the steps Performing Defendant has taken to attempt to obtain access. Ohio EPA may, as it deems appropriate, assist Performing Defendant in obtaining access.

28.     Nothing in this Consent Decree shall be construed to limit the statutory authority of the Director or his authorized representatives to enter at reasonable times upon any private or public property, real or personal, to inspect or investigate, obtain samples and examine or copy any records to determine compliance with R.C. Chapters 3734 and/or 6111.

## XIV. PROGRESS REPORTS AND NOTICE

29.     Beginning with the first full month following the Effective Date of this Consent Decree and throughout the period that this Consent Decree is effective, unless otherwise directed by Ohio EPA, Performing Defendant shall submit, by email to Raymond R. Moreno, Raymond.Moreno@epa.ohio.gov, or his successor, and to Sam Staschiak at Samuel.Staschiak@epa.ohio.gov, or to his successor, with copies to the Settling Federal Agencies, a written progress report to Ohio EPA by the tenth day of every month. At a minimum, the progress reports shall:

A.      Describe the status of the Work and actions taken toward achieving compliance with the Consent Decree during the reporting period.

B.      Describe the difficulties encountered during the reporting period and actions taken to rectify any difficulties.

C.    Describe activities planned for the next month.

D.    Identify changes in key personnel.

E.    List targets and actual completion dates for each element of activity, including project completion.

F.    Provide an explanation for any deviation from any applicable schedule.

G.    Indicate what analytical data was received during the period and provide copies of all data required under Section XII, <u>Sampling and Data Availability</u>.

H.    Indicate the quantity of the contaminated soil and waste that was treated and/or removed and the contaminated ground water and surface water that was treated and where such contaminated media were disposed.

## XV.  <u>REVIEW OF SUBMITTALS</u>

30.    This Section applies to all documents Performing Defendant is required to submit to Ohio EPA for review and approval in accordance with the requirements of this Consent Decree.

31.    All RD/RA documents submitted to Ohio EPA shall be developed in accordance with the attached RD/RA Work Plan and Guidance Document List (Appendices C and D).   Every document that Performing Defendant is required to submit to Ohio EPA under this Consent Decree is subject to no more than ninety (90) day review by Ohio EPA, unless Ohio EPA notifies Performing Defendant in writing that additional review time is required due to extenuating circumstances, in accordance with this Consent Decree and applicable state and federal laws. Upon review, Ohio EPA may at its sole discretion (1) approve the submission in whole or in part; (2) approve the submission upon specified conditions or modifications; (3) modify the submission; (4) disapprove the submission in whole or in part; (5) notify Performing Defendant of deficiencies; or (6) any combination of the above.

17

32.     If Ohio EPA disapproves a submittal, in whole or in part, Ohio EPA will notify Performing Defendant of the deficiencies in writing within ninety (90) days of the submittal. Performing Defendant shall, within forty-five (45) days of receipt of Ohio EPA's written notice, or if supplemental field, laboratory, or other investigatory work must be performed, within forty-five (45) days of completion of such work, or such longer period of time as specified in writing by Ohio EPA, correct the deficiencies and submit a revised submission to Ohio EPA for approval. Notwithstanding the notice of deficiency, Performing Defendant shall proceed to take any action(s) required by the approved portion(s) of the submission.

33.     If Ohio EPA does not approve a revised submission, in whole or in part, Ohio EPA may again require Performing Defendant to correct the deficiencies and incorporate all changes, additions, and/or deletions within fourteen (14) days, or such time period as specified by Ohio EPA in writing.  In the alternative, Ohio EPA may approve upon condition, modify or disapprove the revised submission.

34.     In the event of approval or approval upon conditions or modifications, Performing Defendant shall proceed to take any action required by the submission as approved by Ohio EPA.

35.     All work plans, reports, or other items required to be submitted to Ohio EPA under this Consent Decree shall, upon written approval by Ohio EPA, be deemed to be incorporated in and made an enforceable part of this Consent Decree.  In the event that Ohio EPA approves a portion of a work plan, report, or other item, the approved portion, together with any modifications or conditions thereto, shall be deemed to be incorporated in and made an enforceable part of this Consent Decree.

18

36.     If Ohio EPA determines that any additional or revised guidance documents affect the Work to be performed in implementing the RD/RA, Ohio EPA will notify Performing Defendant, and Performing Defendant shall modify the work plan(s) and/or other affected documents according to Ohio EPA's comments.

## XVI. DISPUTE RESOLUTION

37.     This Section shall only be applicable to the following portions of this Consent Decree: Section VIII, Implementation of the Remedy; Section IX, Additional Work; Section XV, Review of Submittals; and Sections XX, Payments and Reimbursement of Costs by Otterbein University to Ohio EPA and the Ohio Attorney General, and XXII, Payments and Reimbursement of Costs by the United States to Ohio EPA and the Ohio Attorney General, to the extent that the dispute concerns the accuracy of the State's request for reimbursement and/or whether the costs are related to Work beyond the objectives of this Consent Decree as set forth in Section I, Statement of Purpose.  In the event of a dispute over Future Ohio Response Costs, Defendants shall not be required to pay the contested amount of the Future Ohio Response Costs until the dispute is resolved.

38.     The Site Coordinators and/or the alternate Site Coordinators shall, whenever possible operate by consensus.  In the event that a disagreement exists about either the adequacy or disapproval of any work plan, report, or other item required to be submitted by Performing Defendant pursuant to this Consent Decree, or the need for additional Work, then the Site Coordinators shall have fifteen (15) days from the date the dispute arises to negotiate in good faith in an attempt to resolve the differences.  The dispute arises when either the Ohio EPA Site Coordinator provides a brief written notice of dispute to the Performing Defendant's Site

19

Coordinator, or the Performing Defendant's Site Coordinator provides a brief written notice of dispute to the Ohio EPA Site Coordinator. This fifteen (15) day period may be extended by mutual agreement of the Parties, up to an additional seven (7) days.

39.     In the event that the Site Coordinators and/or the alternate Site Coordinators are unable to reach consensus on the dispute, then each Site Coordinator and/or the alternate Site Coordinator shall reduce his or her position to writing within thirty (30) days of the end of the good faith negotiations referenced in Paragraph 38. Those written positions shall be immediately exchanged by the Site Coordinators. Following the exchange of written positions, the Parties shall have an additional fourteen (14) days to resolve their dispute. If Ohio EPA concurs with the position of the Performing Defendant, then the work plan, report or other item required to be submitted pursuant to this Consent Decree shall be modified as provided for by Ohio EPA. If necessary, either Party may petition this Court for modification of the Consent Decree to include any required extensions of time or variances of required Work.

40.     If Ohio EPA does not concur with the position of Performing Defendant, the Ohio EPA Site Coordinator will notify the Performing Defendant in writing. Upon receipt of such written notice, the Parties shall have fourteen (14) days to forward a request for resolution of the dispute, along with a written statement of the dispute, to an Ohio EPA, Division of Environmental Response and Revitalization ("DERR") Manager. The statement of dispute shall be limited to a concise presentation of the Parties' position on the dispute. The DERR Manager, or his/her designee, will resolve the dispute based upon and consistent with this Consent Decree, state law, including R.C. Chapters 3734 and 6111, and the regulations promulgated thereunder, the NCP, and other applicable state and federal laws.

20

41.     If Performing Defendant and Ohio EPA do not agree on a resolution of the dispute within fourteen (14) days of the decision reached by the DERR Manager, either Party may petition this Court to resolve the dispute under this Consent Decree. In this Court proceeding, Performing Defendant shall have the burden of demonstrating by a preponderance of the evidence that the decision by Ohio EPA is unlawful and/or unreasonable.

42.     The pendency of dispute resolution set forth in this Section shall not affect the time period for completion of the Work to be performed under this Consent Decree, except that upon written mutual agreement of the Parties, any time may be extended as appropriate under the circumstances. Elements of Work not affected by the dispute will be completed in accordance with the schedules contained in the RD/RA Work Plan and other deliverables.

43.     Within thirty (30) days of resolution of a dispute regarding disapproval or inadequacy of a submittal or the need for additional Work, Performing Defendant shall incorporate the resolution and final determination into the work plan, report, or other item required to be submitted under this Consent Decree and proceed to implement this Consent Decree according to the amended work plan, report, or other item required to be submitted under this Consent Decree.

44.     In the event that a disagreement exists about the accuracy of the State's request for reimbursement of Future Ohio Response Costs, then within sixty (60) days from receipt of the invoice for payment of Future Ohio Response Costs, a Defendant shall submit to a DERR Manager a concise written presentation of the Defendant's position on the dispute. The DERR Manager, or his/her designee, will resolve the dispute based upon and consistent with this Consent Decree; state law, including R.C. Chapters 3734 and 6111, and the regulations promulgated thereunder; the NCP; and other appropriate state and federal laws.

21

45.     If Defendants and Ohio EPA do not agree on a resolution of the Future Ohio Response Costs dispute within fourteen (14) days of the decision reached by the DERR Manager, any Party may file a motion in this Court to resolve the dispute under this Consent Decree.  In this Court proceeding, Defendants shall have the burden of demonstrating by a preponderance of the evidence that the decision by Ohio EPA is unlawful, unreasonable, or inconsistent with the terms of this Consent Decree.

46.     Within sixty (60) days after resolution of a dispute regarding any inaccurate statement issued for reimbursement of Future Ohio Response Costs, Ohio EPA will make any necessary corrections to the statement and submit to Defendants a corrected statement.  Performing Defendant shall pay its 50% share of the corrected amount within thirty (30) days of receipt of the corrected amount.  The United States shall pay its 50% share of the corrected amount as soon as reasonably practicable after receipt of the corrected statement.

47.     Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to those matters set forth in Paragraph 37 of this Consent Decree.

## XVII.  ACCESS TO INFORMATION

48.     Performing Defendant shall provide to Ohio EPA and/or the Settling Federal Agencies, upon request, copies of all non-privileged documents and information within its possession or control or within possession or control of its contractors or agents relating to events or conditions at the Site including, but not limited to manifests, reports, correspondence, or other documents or information related to the Work.

22

49.     Performing Defendant may assert a claim that documents or other information submitted to Ohio EPA pursuant to this Consent Decree are confidential under the provisions of Ohio Adm. Code 3745-49-03 or 3745-50-30(A) or R.C. 6111.05(A). If no such claim of confidentiality accompanies the documents or other information when it is submitted to Ohio EPA, it may be made available to the public without notice to Performing Defendant.

50.     Performing Defendant may assert that certain documents or other information are privileged under the attorney-client or any other privilege recognized by applicable law. If Performing Defendant asserts that certain documents or information are privileged or confidential under applicable law, it shall provide Ohio EPA and Settling Federal Agencies with the confidentiality being asserted and the basis for the assertion.

51.     No claim of confidentiality or privilege, including but not limited to, claims made pursuant to R.C. 3745.70 through 3745.73, shall be made with regard to any data gathered pursuant to this Consent Decree, including but not limited to, all sampling, analytical, monitoring, or laboratory reports.

52.     Performing Defendant shall preserve for the duration of this Consent Decree and for a minimum of ten (10) years after its termination, all documents and other information within its possession or control, or within the possession or control of its contractors or agents, which in any way relate to the Work notwithstanding any document retention policy to the contrary. Performing Defendant may preserve such documents by microfiche, compact disc, or other electronic or photographic device. Performing Defendant shall notify Ohio EPA and Settling Federal Agencies at least sixty (60) days prior to the destruction of these documents or other information; and upon request, shall deliver such documents and other information to Ohio EPA.

23

## XVIII. INDEMNITY

53.     Performing Defendant agrees to indemnify, save, and hold harmless, but not defend, the State from any and all claims or causes of action arising from, or related to, events or conditions at the Site, except where the claims or causes of action result from negligent, reckless, or intentionally tortious conduct by the State occurring outside of the State's exercise of its discretionary functions.  Discretionary functions of the State include, but are not limited to, the State's review, approval, or disapproval of Work performed pursuant to the Consent Decree.  The State agrees to provide notice to Performing Defendant within thirty (30) days of receipt of any claim that may be the subject of indemnity as provided in this Section, and to cooperate with Performing Defendant in the defense of any such claim or action against the State.  The State shall not be considered a party to and shall not be held liable under any contract entered into by Performing Defendant in carrying out the activities pursuant to this Consent Decree.

## XIX. UNAVOIDABLE DELAYS

54.     If any event occurs that causes or may cause a delay of any Work requirements of this Consent Decree, Performing Defendant shall notify the Ohio EPA Site Coordinator in writing within ten (10) calendar days of the event, describing in detail the anticipated length of the delay, the precise cause or causes of the delay, the measures taken and to be taken to prevent or minimize the delay and the timetable by which measures will be implemented.  Performing Defendant shall adopt all reasonable measures to avoid or minimize any such delay.

55.     With the provision that the notification in Paragraph 54, above, does not necessarily terminate or delay any Work requirement in this Consent Decree, in any action by the State to enforce any of the provisions of this Consent Decree, Performing Defendant may raise that it is

24

entitled to a defense and that its conduct was caused by reasons entirely beyond its control such as, by way of example and not limitation, acts of God, strikes, acts of war, civil disturbances, or vandalism. While the State does not agree that such a defense exists, it is, however, hereby agreed upon by Performing Defendant and the State that it is premature at this time to raise and adjudicate the existence of such a defense and that the appropriate point at which to adjudicate the existence of such a defense is at the time that a proceeding to enforce this Consent Decree, if any, is commenced by the State. At that time, Performing Defendant will bear the burden of proving that any delay was or will be caused by circumstances entirely beyond the control of the Performing Defendant. Unanticipated or increased costs associated with the implementation of any Work required by this Consent Decree, shall not serve as a basis for an extension of time under this Consent Decree. Any extension of a date based on a particular incident does not mean that Performing Defendant shall receive an extension of a subsequent date or dates. Performing Defendant must make an individual showing of proof for each incremental step or other requirement for which an extension is sought.

### XX. <u>PAYMENTS AND REIMBURSEMENT OF COSTS BY OTTERBEIN UNIVERSITY TO OHIO EPA AND THE OHIO ATTORNEY GENERAL</u>

56.     No later than one hundred twenty (120) days after the Effective Date of this Consent Decree, Performing Defendant shall pay to Ohio EPA $81,305.96 in settlement of its share of all unpaid Past Ohio Response Costs incurred by Ohio EPA through July of 2021. Payment shall be paid in the form of a certified check made payable to "Treasurer, State of Ohio" and forwarded to Sandra Finan, Paralegal, or her successor, Environmental Enforcement Section, 30 East Broad St., 25th Floor, Columbus, OH 43215. Performing Defendant shall send a copy of the transmittal letter

25

and a copy of the check to the DERR Fiscal Officer, the Ohio EPA Kilgore Manufacturing Site Coordinator, and the Assistant Attorney General representing the State in this case.

57. Performing Defendant shall reimburse Ohio EPA for 50% of the Future Ohio Response Costs. Ohio EPA will submit an itemized statement of its Future Ohio Response Costs to Performing Defendant on an annual basis. Performing Defendant shall pay its 50% share of Future Ohio Response Costs for the previous year within one hundred twenty (120) days of receipt of such itemized statement at the address set forth on the statement.

58. No later than one hundred twenty (120) days after the Effective Date of this Consent Decree, Performing Defendant shall pay to the Ohio Attorney General $2,062.40 in settlement of its share of all unpaid Ohio Response Costs incurred by the Ohio Attorney General through the Effective Date of this Consent Decree. Payment shall be paid in the form of a certified check made payable to "Treasurer, State of Ohio" and forwarded to Sandra Finan, Paralegal, or her successor, Environmental Enforcement Section, 30 East Broad St., 25th Floor, Columbus, OH 43215. Performing Defendant shall send a copy of the transmittal letter and a copy of the check to the Assistant Attorney General representing the State in this case.

59. Pursuant to R.C. 131.02(D), interest shall accrue on all Ohio Response Costs from the date that they become past due, at the rate per annum required by R.C. 5703.47, until payment is remitted. Performing Defendant shall remit payment for any such interest due to Ohio EPA by a certified check made payable to "Treasurer, State of Ohio," at the address set forth in Paragraph 56 or on the itemized statement. Payment of interest on past due Ohio Attorney General's costs shall be by electronic funds transfer according to the payment instructions provided by the Ohio Attorney General's Office.

## XXI. PAYMENTS AND REIMBURSEMENT OF COSTS BY THE UNITED STATES TO OTTERBEIN UNIVERSITY (PERFORMING DEFENDANT)

60.     As soon as reasonably practicable after the Effective Date of this Consent Decree, the United States, on behalf of the United States Department of Defense, shall pay Performing Defendant $281,568.94 by electronic funds transfer pursuant to instructions to be provided by Performing Defendant, as its full share of Response Costs incurred, including all costs that have been incurred prior to the Effective Date.   In the event the payment required under this Paragraph is not made within one hundred and twenty (120) days after the Effective Date, interest on the unpaid balance shall be paid at the rate established pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), with the interest accrual commencing on the ninety-first day after the Effective Date.

61.     Performing Defendant shall also make an annual written demand to the United States for subsequent payments of 50% of Otterbein's Response Costs that have not already been reimbursed by the United States ("Additional Response Costs"); except that Performing Defendant shall make no demands for additional costs after submission and approval by Ohio EPA of Completion of the Remedial Action Report pursuant to paragraph 5.6 of the Remedial Action Work Plan, Appendix C hereto.  Performing Defendant may make its first annual written demand for 50% of Otterbein's Additional Response Costs incurred after the Effective Date and through the end of that calendar year.  Performing Defendant will make all such demands in writing to the United States requesting reimbursement for costs incurred during the previous calendar year. Performing Defendant's written demand(s) under this Paragraph shall specify on a line-by-line basis: (i) the total amount of Additional Response Costs incurred by Performing Defendant during the prior one-year time period in connection with the performance of the RD/RA; (ii) the total

27

amount of Additional Response Costs for services of the Site Coordinator in connection with the performance of the RD/RA at the Site; and (iii) the total amount of any interest from the United States due or owing under the terms of this Consent Decree. Performing Defendant's written demands under this Paragraph shall not seek or demand payment for any costs incurred more than two (2) years prior to the date of receipt of the demand in writing. The United States has the right to refuse payment of any costs (including interest accrued on such costs) that have not been identified and sought in a written demand from Performing Defendant within two (2) years of the date on which the costs were incurred. Performing Defendant's written demands under this Paragraph shall not seek or demand payment for any costs that have not been paid by Performing Defendant as of the date of the demand, and the United States has the right to refuse payment of any costs that have not been paid by Performing Defendant as of the date of the demand.

## XXII. PAYMENTS AND REIMBURSEMENT OF COSTS BY THE UNITED STATES TO OHIO EPA AND THE OHIO ATTORNEY GENERAL

62.     As soon as reasonably practicable after the Effective Date of this Consent Decree, the United States shall pay $81,305.96 in settlement of its share of all Past Ohio Response Costs incurred by Ohio EPA through July 2021. Payment shall be paid by electronic funds transfer according to the payment instructions provided by Ohio EPA.

63.     The United States shall reimburse Ohio EPA for 50% of the Future Ohio Response Costs. Ohio EPA will submit an itemized statement of its Future Ohio Response Costs to Defendants on an annual basis. Ohio EPA shall make all such demands in writing to the United States requesting reimbursement for costs incurred during the previous calendar year. Ohio EPA's written demand(s) under this Paragraph shall specify on a line-by-line basis the total amount of response costs incurred by Ohio EPA during the prior one-year time period in connection with the

28

performance of the RD/RA. Ohio EPA's written demands under this Paragraph shall not seek or demand payment for any costs incurred more than two (2) years prior to the date of receipt of the demand in writing or for costs previously reimbursed by the United States. The United States has the right to refuse payment of any costs (including interest accrued on such costs) that have not been identified and sought in a written demand from Ohio EPA within two (2) years of the date on which the costs were incurred. The United States shall pay its 50% share of Future Ohio Response Costs for the previous year as soon as reasonably practicable after the receipt of such itemized statement at the address set forth on the itemized statement.

64.     As soon as reasonably practicable after the Effective Date of this Consent Decree, the United States shall pay to the Ohio Attorney General $2,062.40 in settlement of its share of all Ohio Response Costs incurred by the Ohio Attorney General through the Effective Date of this Consent Decree. Payment shall be paid by electronic funds transfer according to the payment instructions provided by the Ohio Attorney General's Office. The United States shall send a copy of the transmittal letter to the Assistant Attorney General representing the State in this case.

65.     In the event that any payment required to be made by the United States under this Consent Decree is not made within one hundred twenty (120) days of the Effective Date for an amount specifically set forth in this Consent Decree or within one hundred twenty (120) days of receipt of an itemized statement to obtain payment submitted under this Consent Decree after the Effective Date, interest on the unpaid balance shall be paid at the rate established pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), with interest accrual commencing on the hundred twenty-first day after the Effective Date or after the receipt date of the itemized statement. The United States shall remit payment for any such interest due to Ohio EPA/and or the Ohio

Attorney General by electronic funds transfer according to the payment instructions provided by the State.

66.     The State and the United States agree that in any judicial proceeding to enforce the terms of this Consent Decree and/or to find the United States in contempt for failure to comply or delay in compliance with such terms, the United States may raise as a defense that such failure or delay was caused by circumstances beyond its control or that such failure or delay was caused by the unavailability of appropriated funds. While the State disagrees that such defenses exist, the State and the United States agree and stipulate that it is premature at this time to raise and adjudicate the existence of such defenses.

## XXIII. FINANCIAL GUARANTEES

67.     Performing Defendant shall submit three (3) years of audited financial statements to Ohio EPA, concurrently with Performing Defendants' submission of the initial cost estimate for completion of the remedy, established at the conclusion of the Remedial Design phase, for Ohio EPA's review and approval in accordance with Section XVI, Review of Submittals.

68.     Performing Defendant shall submit annual financial documentation to Ohio EPA by December 1 each year. The annual financial documentation shall include

A.     Audited financial statements for the previous fiscal year.

B.     A letter signed by the Performing Defendant's chief financial officer that: references this Consent Decree and the lawsuit, including the case number; states the current revised cost estimate, based upon actual cost of remediation and the monies spent thereon; lists all facilities for which the Performing Defendant is guaranteeing remedial action and operation and maintenance costs; lists all

facilities for which the Performing Defendant has submitted financial assurance of remedial action and operation and maintenance costs other than through a guarantee (if any); and states that the Performing Defendant is demonstrating financial assurance through this Consent Decree.

C.    A financial assurance information schedule, in the form of the financial assurance information schedule contained in Appendix F, signed and certified as accurate and complete by the Performing Defendant's chief financial officer.

D.    A copy of the independent certified public account's report on examination of the Performing Defendant's audited financial statements for the previous fiscal year.

E.    A special report from the Performing Defendant's independent certified public accountant to the Performing Defendant stating that:

1.    The accountant has compared the data, which the letter from the chief financial officer specifies as having been derived from the independently audited year-end financial statements for the latest fiscal year, with the amounts in such financial statements.

2.    In connection with that procedure, no matters came to the accountant's attention that caused the accountant to believe that the specified data should be adjusted.

69.    Ohio EPA shall review the submitted annual financial documentation and notify Performing Defendant, in writing, whether Ohio EPA has determined that Performing Defendant meets the financial test criteria or Performing Defendant does not meet the financial test criteria.

70.    To satisfy the financial test criteria, Performing Defendant must demonstrate either:

31

A.  The Performing Defendant has the following:

1.  Two of the following three ratios: a ratio of total liabilities to net worth less than 2.0; a ratio of the sum of net income plus depreciation, depletion, and amortization to total liabilities greater than 0.1; and a ratio of current assets to current liabilities greater than 1.5.

2.  Net working capital and tangible net worth each at least six times the sum of the Current Revised Cost Estimate.

3.  Tangible net worth of at least ten million dollars.

4.  Assets in the United States amounting to at least ninety percent of the owner's or operator's total assets or at least six times the sum of the Current Revised Cost Estimate.

B.  The Performing Defendant has the following:

5.  A current rating for the owner's or operator's most recent bond issuance of "AAA, AA, A, or BBB" as issued by "Standard and Poor's" or "Aaa, Aa, A, or Baa" as issued by "Moody's."

6.  Tangible net worth at least six times the sum of the Current Revised Cost Estimate.

7.  Tangible net worth of at least ten million dollars.

8.  Assets located in the United States amounting to at least ninety percent of the owner's or operator's total assets or at least six times the sum of the Current Revised Cost Estimate.

71.     Ohio EPA may disallow use of this test based on any qualifications in the opinion expressed by the independent certified public account in the accountant's report on examination of the Performing Defendant's financial statements. An adverse opinion or a disclaimer of opinion will be cause for such disallowance. Ohio EPA will evaluate other qualifications on an individual basis.

72.     Performing Defendant agrees that if Ohio EPA determines, based on Ohio EPA's review of any annual audited financial statement, that Performing Defendant fails to meet the financial test criteria, or if Ohio EPA disallows use of the financial test in accordance with the previous paragraph, Performing Defendant shall send, by email to Sam Staschiak at Samuel.Staschiak@epa.ohio.gov, or to his successor, notice to the Director of Ohio EPA that Performing Defendant intends to provide alternative financial assurance within ninety (90) days of Ohio EPA's determination. Within one hundred twenty (120) days after Ohio EPA's determination, the Performing Defendant shall establish such financial assurances.

73.     Performing Defendant shall notify the Director, by email to Sam Staschiak at Samuel.Staschiak@epa.ohio.gov, or to his successor, of any voluntary or involuntary proceeding under "Title XI (Bankruptcy)," of the U.S. Code, naming Performing Defendant as debtor, no later than ten (10) days after that proceeding commences.

74.     Performing Defendant agrees to remain bound under this section notwithstanding any or all of the following: amendment or modification of the remedial action and operation and maintenance plan, the extension or reduction of the time of performance of the remedial action and operation and maintenance, or any other modification or alteration of an obligation of the owner or operator.

33

## XXIV. AGREEMENTS NOT TO SUE AND RESERVATION OF RIGHTS

75.     In consideration of the actions that will be performed by the Performing Defendant and the payments to be made by the United States and Performing Defendant under the terms of this Consent Decree, and except as otherwise specifically provided in this Consent Decree, the State agrees not to sue or to take administrative action against Otterbein University and the United States pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), R.C. Chapters 3734, 3745 and 6111 or other applicable State or federal laws including common law, for the Work required by this Consent Decree or the Matters Addressed and/or for Past Ohio Response Costs and Future Ohio Response Costs.  These agreements are conditioned upon the complete and satisfactory performance by the Defendants of their respective obligations under this Consent Decree, including, but not limited to, completion of the Work and payment of Ohio's Response Costs. These agreements extend only to the Defendants and do not extend to any other person.

76.     This Consent Decree shall not be construed to limit the authority of the State to seek relief for claims, conditions, or response actions not addressed by this Consent Decree, including without limitation injunctive relief, civil penalties, and cost recovery.  Nothing in this Consent Decree is intended as a release or Agreement not to sue for any claim or cause of action, administrative or judicial, civil or criminal, past or future, in law or in equity, which the State may have against any person, firm corporation or other entity not a Party to this Consent Decree.

77.     Nothing in this Consent Decree shall be construed to limit the authority of the State to undertake any action against any entity, including either or both Defendants, to eliminate or mitigate conditions that may present an imminent threat to the public health, welfare or environment and to seek cost reimbursement for any such action. Nothing in this Consent Decree

34

shall be construed to limit the authority of the State to seek relief for claims for damage to natural resources.

78.     Nothing in this Consent Decree shall relieve Defendants of any obligation to comply with R.C. Chapters 3734 and 6111 including, without limitation, any regulation, license or order issued under these Chapters, and any other applicable federal, state or local statutes, regulations, or ordinances, including but not limited to permit requirements.

79.     The State reserves the right to seek legal and/or equitable relief to enforce the requirements of this Consent Decree, including penalties against Defendants for noncompliance with this Consent Decree.

80.     The State reserves the right to perform all or any portion of the Work or take any other measures it deems necessary to protect public health and the environment, including recovery of all Ohio Response Costs, in the event that the requirements of this Consent Decree are not wholly complied with within the time frames required by this Consent Decree.

81.     Upon the payments of Response Costs by the United States as required by this Consent Decree, the Performing Defendant hereby forever releases, discharges, and agrees not to assert (by way of the commencement of an action, the joinder of the United States in an existing action, or in any other fashion) any and all claims, causes of action, suits or demands of any kind whatsoever in law or in equity which it may have had, or hereafter have, including, but not limited to, claims under CERCLA sections 107 and 113, against the United States for the (1) Work required under this Consent Decree and the Matters Addressed; (2) Ohio's Response Costs; (3) any past response costs incurred by Otterbein as alleged in its Complaint; and (4) any response costs incurred by Otterbein through completion of the Work required under this Consent Decree.

82.     By entering into this Consent Decree, Defendants do not waive any defenses that they may have in any future action identified in this Section, nor do Defendants waive any claim or defenses against any others not a Party to this action.   However, in any subsequent administrative or judicial proceeding initiated by the State for injunctive relief, recovery of response costs, damages, or other relief relating to the Site, Defendants shall not assert, and may not maintain any defense or claim based upon statute of limitations or the principles of waiver, laches, res judicata, collateral estoppel, issue preclusion, claim splitting or other defenses based upon the contention that the claims brought by the State in a subsequent action were or should have been brought in the instant action.

83.     In any subsequent administrative or judicial proceeding initiated by the Performing Defendant for injunctive relief, recovery of response costs, damages, or other relief relating to the Facility, the United States shall not assert, and may not maintain any defense or claim based upon statute of limitations or the principles of waiver, laches, res judicata, collateral estoppel, issue preclusion, claim splitting or other defenses based upon the contention that the claims brought by the Performing Defendant in a subsequent action were or should have been brought in the instant action.

84.     The United States specifically reserves its right to assert any claims or actions regarding the Site brought on behalf of the United States Environmental Protection Agency, any lead agency under the NCP, or a natural resource trustee.

## XXV.  **EFFECT OF SETTLEMENT; CONTRIBUTION PROTECTION**

85.     The Parties agree, and by entering this Consent Decree this Court finds, that this Consent Decree constitutes a judicially approved settlement for purposes of Section 113(f)(2) of

CERCLA, 42 U.S.C. § 9613(f)(2), and that the Performing Defendant and the United States are entitled, as of the Effective Date, to protection from actions or claims as provided by CERCLA Section 113(f)(2), 42 U.S.C. § 9613(f)(2), or as may be otherwise provided by law, for Matters Addressed in this Consent Decree.

## XXVI. **OTHER CLAIMS**

86.     Nothing in this Consent Decree shall constitute or be construed as a release from any claim, cause of action, or demand in law or equity against any person, firm, partnership, or corporation, not subject to this Consent Decree for any liability arising from, or related to, events or conditions at the Site, and Defendants have not purported to or held themselves out as representing another person, firm, partnership, or corporation. Defendants expressly deny that they are the agent for or represent or otherwise have the authority to represent or serve the interests of another person, firm, partnership, or corporation.

87.     Performing Defendant certifies, based on knowledge and belief and subject to the penalties of the False Claims Act, 31 U.S.C. § 3729 *et seq.*, and other applicable law, that as of the Effective Date, it has not been reimbursed by any entity or party for the response costs for which it will receive reimbursement or payment under this Consent Decree. Performing Defendant shall not seek or accept any reimbursement or payment from any other entity or party for the portions of Performing Defendant's response costs that the United States pays or reimburses to Performing Defendant pursuant to this Consent Decree.

## XXVII. **TERMINATION**

88.     This Consent Decree shall terminate upon joint motion of the Parties, and approval of the Court, following completion of all activities required under this Consent Decree. This

Section, and Section XXIV, Agreements Not to Sue and Reservation of Rights; Section VI, Satisfaction of Lawsuit; No Admission; Section X, Notice, Land Use, and Conveyance of Title; Section XVII, Access to Information; and Section XVIII, Indemnity shall survive this Termination provision.

## XXVIII. **MODIFICATION**

89.     Except as otherwise allowed by law or otherwise specifically permitted by the Consent Decree, non-substantive modifications, for example address changes, of this Consent Decree shall be by written approval by the Parties and notice of such modification(s) to the Court. Substantive modifications to this Consent Decree shall be by written agreement of the Parties and shall not take effect unless approved by the Court.

## XXIX. **MAILING AND DELIVERY OF DOCUMENTS**

90.     All documents requiring submittal pursuant to this Consent Decree or any plan developed in accordance with this Consent Decree shall be either distributed as otherwise agreed to by the parties or sent by email to:

> Sam Staschiak
> Project Coordinator
> Ohio EPA
> Division of Environmental Response and Revitalization
> VAP, Enforcement, Remediation and Brownfields (VERB) Section
> P.O. Box 1049
> Columbus, OH 43216-1049
> Samuel.Staschiak@epa.ohio.gov

All correspondence with the Defendants shall be sent to the following:

> Susan K. Bolt
> Vice President for Business Affairs
> One Otterbein University
> 1 South Grove Street
> Westerville, OH 43081-2006

Telephone: (614) 823-1354

Chief, Environmental Defense Section
United States Department of Justice
Environmental & Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, DC 20044
DJ#: 90-11-6-18349, 90-11-6-19174.

## XXX. **COMPLIANCE WITH APPLICABLE LAWS, PERMITS AND APPROVALS**

91.     All activities undertaken by Performing Defendant pursuant to this Consent Decree shall be undertaken in accordance with the requirements of all applicable federal, state and local laws, rules, regulations and permits or other legal requirements, including the Consent Decree. Performing Defendant shall submit timely applications and requests for any such permits and approvals. Where such laws appear to conflict with the other requirements of this Consent Decree, Performing Defendant is ordered and enjoined to immediately notify Ohio EPA of the potential conflict. Performing Defendants is ordered and enjoined to include in all contracts or subcontracts entered into for Work required under this Consent Decree, provisions stating that such contractors or subcontractors, including their agents and employees, shall perform all activities required by such contracts or subcontracts in compliance with this Consent Decree and all applicable laws and rules. This Consent Decree is not a permit issued pursuant to any federal, state, or local law or rule.

92.     Should Performing Defendant identify any inconsistency between or among this Consent Decree, any applicable federal, state or local laws, rules, regulations or permits or other legal requirements, or any of the guidance documents, work plans, reports, or other items required to be submitted to Ohio EPA under this Consent Decree, Performing Defendant shall promptly

notify Ohio EPA in writing of each inconsistency not later than thirty (30) days after identifying the inconsistency and the effect of the inconsistencies upon the Work to be performed. Performing Defendant shall also recommend, along with a supportable rationale justifying each recommendation, the requirement Performing Defendant believes should be followed. Performing Defendant shall implement the affected Work as directed by Ohio EPA.

## XXXI. APPENDICES AND DOCUMENTS APPROVED PURSUANT TO THIS CONSENT DECREE

93.     The Parties agree that the appendices attached to this Consent Decree and all documents approved by Ohio EPA pursuant to the requirements of this Consent Decree are incorporated by reference into and are an enforceable part of this Consent Decree.

## XXXII. COURT COSTS

94.     Performing Defendant shall pay any court costs in this case.

## XXXIII. STIPULATED PENALTIES

95.     In the event that any Ohio EPA approved deadline contained in the schedule of any approved or approved amended submittal is not met, Performing Defendant is ordered and enjoined to pay stipulated penalties that shall accrue in the amount of Fifty Dollars ($50) per day for the first seven (7) days of non-compliance; One Hundred Twenty-Five Dollars ($125) per day for the 8th day through the 14th day of noncompliance; Two Hundred Fifty Dollars ($250) per day for the 15th day through the 30th day of non-compliance; and Five Hundred Dollars ($500) per day, per violation for violations lasting beyond thirty (30) days and thereafter.

96.     Any payment of stipulated penalties accrued under the provisions of Paragraph 95 shall be made by delivering to Sandra Finan, Paralegal, or her successor, at the Office of the Attorney General of Ohio, Environmental Enforcement Section, 30 East Broad Street, 25th Floor,

Columbus, Ohio 43215, a certified check(s) for the appropriate amounts(s), within fourteen (14) days from the date the default is cured, made payable to "Treasurer, State of Ohio" to be deposited into the Hazardous Waste Clean-up Account, created pursuant to R.C. Section 3734.28.

## XXXIV. AUTHORITY TO ENTER INTO THE CONSENT DECREE

97.     Each signatory for a Party represents and warrants that he/she has been duly authorized to sign this document and so bind the Party to all terms and conditions thereof. This Consent Decree may be executed in counterparts, each of which shall be deemed an original, but all of which taken together shall constitute one and the same instrument.

## XXXV. EFFECTIVE DATE

98.     This Consent Decree shall be effective upon the date of its entry by the Clerk.

## XXXVI. ENTRY OF CONSENT DECREE AND JUDGMENT BY CLERK

99.     Upon signing of this Consent Decree by the Court, the Clerk is directed to enter it.

## XXXVII. RETENTION OF JURISDICTION

100.    This Court shall retain jurisdiction of this action for the purpose of enforcing this Consent Decree.

## XXXVII. PUBLIC NOTICE

101. The Parties agree and acknowledge that final approval by the State and Defendants and entry of this Order is subject to the requirements of 40 C.F.R. 123.27(d)(2) (iii), which provides for notice of the lodging of the Consent Order, opportunity for public comment, and the consideration of any public comments. The State and Defendants reserve the right to withdraw this Order based on comments received during the public comment period.

## **ORDER**

UPON CONSIDERATION OF THE FOREGOING, the Court hereby finds that this Decree is fair and reasonable, both procedurally and substantively, consistent with applicable law, in good faith, and in the public interest.  THE FOREGOING Decree is hereby ENTERED.

This Court expressly directs, pursuant to Rule 58, Fed. R. Civ. P., ENTRY OF FINAL JUDGMENT in accordance with the terms of this Decree.

IT IS SO ORDERED this 25th day of December, 2023.

JUDGE MICHAEL H. WATSON

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

The undersigned Parties hereby consent to the foregoing Consent Decree in *State v. Otterbein University, et al.*

**DAVE YOST**
**OHIO ATTORNEY GENERAL**

Date: November 7, 2022

IAN F. GAUNT (0097461)
MARK J. NAVARRE (0013674)
Assistant Attorneys General
Environmental Enforcement Section
30 East Broad Street
Columbus, Ohio 43215
Telephone: (614) 466-2766
Facsimile: (614) 644-1926
Ian.Gaunt@OhioAGO.gov
Mark.Navarre@OhioAGO.gov

*Attorneys for the State of Ohio*

PERRY ROSEN
Digitally signed by
PERRY ROSEN
Date: 2023.05.18
11:12:36 -04'00'

Date: _____, 2022

PERRY M. ROSEN

United States Department of Justice

43

Environment & Natural Resources Division
Environmental Defense Section
P.O. Box 7611
Washington, DC 20044
Tel: (202) 353-7792
perry.rosen@usdoj.gov

*Attorney for the United States*


_____    Date _____, ~~2022~~ May 22, 2023
RONALD L. KUIS, Esq.

12 Scenery Road
Pittsburgh, Pennsylvania 15221
Tel: (412) 731-7246
Facsimile: (412) 731-3970
rlkuis@aol.com

*Attorney for Otterbein University*


_____    Date: May 18, 2023
DALLAS F. KRATZER III
Attorney
Steptoe & Johnson PLLC
Huntington Center, Suite 2200
41 South High Street
Columbus, OH 43215
(614) 458-9827
dallas.kratzer@steptoe-johnson.com

*Attorney for Otterbein University*

44